All right, some more when you're ready. At Blasey Court, I am George Moore, and I represent the plaintiff appellant Stephanie Crockett in this case. It's a Title VII sexual harassment claim, and what I'd like to talk about this morning are subject matter jurisdiction in this case, and tangible employment action, and the defendant's affirmative defense. In regard to subject matter jurisdiction, under Title VII, the federal courts are given statutory jurisdiction in these cases, and the plaintiff or claimant is required to file a charge with the EEOC before she can file a complaint in federal court. And the charge that is filed with the EEOC sets out the scope of what the claim can be, and the claim has to be based on the specifics of the charge and anything that is reasonably related to that charge, as well as the reasonable investigation of the EEOC, what they reasonably determine is related to the charge. In this case, the plaintiff, Ms. Crockett, had a lawyer, and she filed her charge with the EEOC within about two weeks of the incident that she was complaining of. And there was a letter on her lawyer's letterhead that she signed that was attached to the charge that set out very specifics about exactly what happened. And it also set out, it checked on the first page of the form that it was a sexual claim, sexual discrimination claim, and it set a time for the occurrence between February 18th and February 25th, and it also stated that the plaintiff was suspended. Now, in responding to the court's request for supplementary briefing on the subject matter jurisdiction question, the defendant said that the charge was insufficient because it did not discuss or did not mention tangible employment action. And in researching this, I cannot find any case that says a charge has to refer to tangible employment action. And the cases that were cited by the defendant, none of those said anything about tangible employment actions. What they were related to was one case was not filed within the time limits. The other couple of cases, I believe, were brought up charges that were not specifically mentioned. They were additional charges by other people, I believe, other than the one person who was mentioned. So unless there are any questions regarding the issue of subject matter jurisdiction, I'll move on to the question of tangible employment action. Well, from the charge, her suspension apparently came from the only event related in the charge were those of February the 18th where she was in the room with Mr. Kent. That was the basis for her suspension. Actually, the basis for her suspension was when she returned to work on February 25th. She had been out on family medical leave from the 19th until the 25th. Her supervisor made a charge that she had again violated mission policy, and that was the reason that was given for her suspension. But that's not in the charge. The charge doesn't say that, no. It just says that she was suspended, and it has the dates of the discrimination of the 18th through the 25th. We have case law which the district court quoted in his opinion that has made clear that factual allegations in the formal litigation must correspond to those set forth in the administrative charge. And if she was suspended on the basis of what happened on February the 25th,  I believe that our argument is that it is reasonably related to the charge because on February 25th when she came back to work that day, she brought this digital recorder with her which conclusively showed that the allegations that were made by her supervisor that led to her being suspended never happened, that this was a fabricated charge. And it relates back to the harassment because a reasonable jury could find that the only reason that he made up this story about her was to either prevent her from bringing charges of sexual discrimination or of discrediting her as a witness in the event that she did so. Our contention is that it was definitely related to the original harassment because it grew out of it and her supervisor made up a charge against her. So when the district court found any claim that such subsequent conduct contributed to an abusive environment is beyond the scope of the charge and may not be pursued, that was error? Are you reading from the order of the district court? Yes, I think that is error because I think it definitely was related to the original charge because it was also another charge that was brought by the supervisor and it was proven by the evidence that there was no basis for it. Neither counsel is probably familiar with this case because we just published it on Friday called Ballas versus Huntington Ingalls Industries, but we reemphasized that point in that case where we said, while we recognize that EEOC charges often are not completed by lawyers and as such must be construed with utmost liberality, we are not at liberty to read into administrative charges allegations they do not contain. You can go ahead and proceed on wherever you want to go, but that may be a point you want to come back to on rebuttal. Yes, but again I would say the suspension is related to the original charge because it was based entirely on information that was provided by the supervisor. The suspension was not given by the supervisor. He didn't have authority to do that, but it was totally based on information that he provided to human relations, human resources, and that information was totally untrue. The plaintiff, Mrs. Crockett, testified that it was not true and she proved that it wasn't true by the use of this recorder, which led to her being terminated, ironically. Going on to the question of the tangible employment action, this is a case where it is based on sexual harassment by the supervisor of the plaintiff, and in cases like that the employer, who is the defendant in this case, Mission Hospital, is vicariously liable for the actions of the supervisor, and the only defense to that is if the employer can show that they had a plan in place that was reasonable in scope and protected employees. One aspect of that, the Supreme Court in the cases of Ellerth and Farragher set up this framework that the defendant, the employer, can bring forth an affirmative defense if they show that as a result of the sexual harassment, the employee did not suffer or sustain any tangible employment action. In this case, the plaintiff was suspended from employment and the district court found that that did not constitute a tangible employment action, and it cited a case from the Sixth Circuit, Howington case, and it said that a suspension would constitute a tangible employment action if it was without pay. Now, as I pointed out in my brief, there is evidence in the record that the plaintiff's suspension was without pay in this case, or it was a loss of benefits. When the Human Resources representative conducted an interview with Ms. Crockett, Ms. Crockett asked her if she would be paid for the time she was out, and the representative told her if she had TPO or PTO, personal time off, she could use that, but if she didn't have any, it would be without pay. So she either lost pay or she lost benefits while she was out on suspension. And the case that was cited by the district court didn't say what the court said it did. It did not say that a suspension had to be with pay. What that decision said was, and it was an unpublished opinion, it said that a suspension constitutes a tangible employment action, and it also said that loss of benefits or loss of pay constitutes a tangible employment action. So in this case, we have either, there's no question she was suspended, and she either lost benefits or she lost pay. So I think clearly it comes under that framework and would constitute a tangible employment action. But there's another requirement for the tangible employment action, is that it be related to the sexual harassment. And in this case, it was related because, as I said in talking about the jurisdiction question, the only reason that she was suspended was because of the information that was provided by her supervisor. And that was false information. It was information that never happened, and she proved that it never happened. And it was related to the sexual harassment because a reasonable jury could find that the reason the supervisor provided this information was to either prevent her from making the charge or to discredit her in the event that he did make the charge. So I think a reasonable jury could find, and this would be a genuine issue of a material fact in this case, that her suspension was related to the original sexual harassment. And I'm sure that... Because that was his motive? Solely because that was his motive for bringing the charge against her? Yes. She was out of work for the week after the sexual harassment occurred, from the 18th of February until the 25th. And within an hour and a half of when she returned to work, she came back to work at 3.30. And at approximately 5 o'clock that day is when he brought this charge to Human Resources that she had again violated policy. And he knew that she was on final warning if she violated any more policy. What was the policy that was violated? Excuse me? What was the policy violated, allegedly? Using a cell phone while she was on duty. And what did it have to do with the alleged sexual harassment? The actual use of the cell phone had nothing to do with it. It would purely be the motivation behind the supervisor because... Clearly you're saying it's just retaliation. It was retaliation. You didn't say that in the administrative charge. No, it was not a retaliation because what we're saying is that it was an effort to prevent her from complaining about the sexual harassment. Or if she did complain about it, it was trying to discredit her because she had already been given this final warning two days before the sexual harassment occurred. And the basis of that final warning was also based on information provided by the supervisor. And part of it was for using a cell phone while she was on duty. But another part of it was that she misrepresented facts. And one of her reasons for not coming forward before she did was that she thought she wouldn't be believed because she had already been on final warning for misrepresenting facts. We think that there is sufficient evidence in the record for a reasonable jury to find that she sustained a tangible employment action and that that would be sufficient to deny the motion for summary judgment in this case. But briefly, the affirmative defense is essentially taken from the law of damages. The court says you have to mitigate your damages. And in this case, the first part of it, she could have done nothing to have prevented this from happening because this supervisor had never sexually harassed her before. She had no reason to complain about his activities. And then after it occurred, the damage was done. It was nothing that she could have done to have caused her injury to be less at that point, even though a major part of the defendant's intentions are that she created problems for herself by not coming forward before she did. In the Ellerth case that was decided by the Supreme Court, the plaintiff in that case went 15 months and never complained about sexual harassment. She actually left and said that she was constructively discharged, filed her action with the EEOC and then the lawsuit, but she never complained to the company. And in that case, which is the one that the Supreme Court set up this framework allowing an affirmative defense, it did not say that this prevented, as a matter of law, or allowed, as a matter of law, the defendant to proceed with an affirmative defense. Before we get to any of this, though, don't you have to establish that the harassment was sufficiently severe to be actionable? And don't you have a problem with that right at the very outset here? I mean, I don't want to excuse what Mr. Kemp did, but it seems to me like in light of a lot of things that go on, it's difficult for me to justify imputing that to his employer. My time is up. Do you want me to go ahead and answer that? Absolutely, please. That question was resolved by the district court, actually. The district court ruled that the evidence was sufficient to show that this was a severe enough occurrence that a reasonable jury could find. The finding doesn't foreclose us from taking another look at that, though, does it? Well, the case I cited in my supplementary brief, the El Paso case, I think, pretty strongly says that unless the defendants appeal that question, that it is something that the court can't look at. So you're saying that the other side should have filed a cross-appeal, and if they didn't, we can't consider it? That's the way I read that case. But we think the evidence was sufficient to show a hostile work environment. Thank you. Thank you. Mr. Yarbrough? Good morning. May it please the court, I'm Jonathan Yarbrough. I represent Mission Hospital in this appeal. And I believe that the district court was actually correct in that this court does not have subject matter jurisdiction to consider the allegations that were not contained in the EEOC charge. We believe that Ms. Crockett failed to exhaust her administrative remedies with the EEOC. As the district court said, and we believe they were correct, the charge itself, the EEOC charge, is limited to the events of February 18, and February 18 only. The district court also, we believe, was correct in stating that there was nothing in the charge regarding any subsequent harassing conduct by Mr. Kemp. And, in fact, Ms. Crockett testified that both before February 18 and after February 18, there was no harassing conduct by Mr. Kemp for roughly the seven-some years that they worked together. It was a one-off event on February 18. We also believe that the court was correct that any claim of subsequent conduct contributed to an abusive environment is beyond the scope of the charge. In other words, really, Your Honors, February 18 should be what we're looking at. I am familiar with the Ballas decision. I happened to see it in the BNA report Monday evening. And I believe the Ballas decision from this court last week is controlling here with respect to the EEOC charge. As I'm certain you're aware, given the recency of the opinion, in the Ballas case, she was actually operating pro se and working with EEOC to file a charge of discrimination. She sent in a first letter describing some incidents, including a denied promotion, personal vendetta by her supervisor, and something that the court referred to as the jeans incident where she wore some ripped jeans to work. The EEOC prepared a charge of discrimination alleging sex discrimination retaliation. The jeans incident was considered to be evidence of sex discrimination. It was not noted to be a continuing action charge at all. It was left blank. Later on, Ms. Ballas, in a second letter to the EEOC, said there's some sexual harassment going on here. And again, didn't check continuing action. The only thing that the court, excuse me, the only thing that the EEOC did at that point was to amend the charge to add an incident where she alleged that her supervisor Price had hugged her. And so ultimately she filed suit, though, alleging a variety of claims, failure to promote, retaliatory termination, hostile work environment, sexual harassment claims, and things of that sort. And the district court and this court both said that there was no jurisdiction because the Title VII claims were not contained in the EEOC charge. What this court actually said also is that since Ballas was pro se, we should construe the charge with utmost liberality. And in doing so, dismissed the claims that were not in the charge, the co-worker harassment claims, the promotion claim. Those were all dismissed. In this particular case, Ms. Crockett, as counsel noted, was represented by an attorney. An attorney drafted her EEOC charge of discrimination. The charge itself addresses the February 18th allegations in detail. And I would submit to the court that we cannot construe it liberally in that case. She's represented by counsel. And in that particular circumstance, the court should not read into the EEOC charge allegations that are simply not contained in the charge. Instead, what Ms. Crockett should have done under the circumstances is simply amend her charge. She had the opportunity to amend her charge. She was represented by counsel. And she chose not to amend her charge. So the only notice that was given to Mission was about the events of February 18th, which they immediately started investigating. In fact, the only allegations in the charge were that she was asked to lift her shirt to prove she's not wearing a wire. She feared termination if she did not comply. But later, of course, testified that her supervisor, Mr. Kemp, had no authority to do so. And that the supervisor, Mr. Kemp, asked her if he could kiss her three times during the course of the evening. And then says that those advances are unwelcome harassment under Title VII. Plaintiff appellant Ms. Crockett is asking this court to infer that somehow she was suspended a week later because of this claimed harassment. Which, by the way, hadn't been reported. And in fact, the individual responsible for suspending her and investigating the cell phone usage incident, Kathy Jones, had no knowledge whatsoever of any allegations of harassment because Ms. Crockett had not brought those forward at all. So the decision maker had no knowledge whatsoever about any of the claimed events of February 18th. Well, she didn't even cooperate in the investigation, if I understand. That is correct. She didn't cooperate, in fact, when she was confronted with the cell phone allegations. And in fact, prior to that, she had been disciplined for inappropriate texting. She had texted some very ugly language to a co-worker who had, they exchanged places in a case, and she had texted very ugly language to her and was disciplined for it. So this was the second time that she was being investigated for cell phone use. She didn't say a thing about the events of 2-18. In fact, Your Honor, if you look at the evening of 2-18, she didn't complain to anybody, no one whatsoever. And then on the 25th, Kathy Jones, who has no knowledge of the events of 2-18, obviously, Teresa McCarthy from Human Resources, who has no knowledge, are discussing with her. And the only thing that Ms. Crockett said is, Mr. Kemp did something horrific to me. They asked for details, and she refused to provide those details. They brought her in several times subsequent to that. Again, she refused to provide details. What she did do on the 19th is go and get a lawyer, and on March 1st, fax an EEOC charge to the EEOC in Charlotte. Again, never providing mission any details of the alleged events of February 18th. In fact, it wasn't until almost a month later on March 17th that she finally provided some detail about the events at issue. So when she was suspended on the 25th, she was suspended pending an investigation into the cell phone use issue, and she was suspended by an individual who had no knowledge whatsoever of any issues related to February 18th. They knew that the accuser had done something horrific to her, allegedly. Allegedly. That was the statement she made. Well, they knew that, then wouldn't that give an employer some pause in the investigation as to, before we allow this to go forward, we have an accuser here that has done a horrific thing to this employee? Not necessarily, Your Honor. I think if that were the case, then any employee could shield themselves from potential discipline by making an allegation, whether true or not, that something horrific had taken place. I think in this circumstance, Mission did exactly what it should have done under the law, and that is they suspended her pending investigation into the allegation of cell phone use, but they also, as the record indicates, immediately started investigating, determined whatever it was that was so horrific because Ms. Crockett herself refused to tell them anything. And so, as the record indicates, the very next day they went to Mr. Kemp to say, what's going on here? They re-interviewed Ms. Crockett several times. They interviewed all of her co-workers who were present that evening. They interviewed Mr. Chandler, who was Mr. Crockett's supervisor, and they drew blanks, absolutely, right there. So I would suggest to this Court that they did the right thing. Mr. Crockett said, I don't know what horrific means. Nothing happened between us. That's not the case, is it? I'm sorry, Your Honor. What did Mr. Crockett say? Mr. Kemp or Ms. Crockett? Mr. Kemp denied anything had taken place. Anything happened, right? That's correct. He denied it. Did he say that she was the person who did something to him? No, he denied ever having anything inappropriate with Ms. Crockett and denied it each time he was asked about it. In fact, after Mission received the EEOC charge, they again brought in Ms. Crockett. They again brought in Mr. Kemp to investigate this. Are we precluded from reconsidering the Court's finding that the harassment was sufficiently severe to be actionable under Title VII because you didn't file a cross appeal on that issue? No, I believe that the Court can review that on its own. So I do not believe that we are precluded, or excuse me, that this Court is precluded from reviewing the severe and pervasive nature of whether or not this event is harassment in the first place. My understanding is that it's open to us to consider any ground that might support the decision below, even if it's inconsistent with what the District Court held, even if you don't file a cross appeal. Now, am I wrong about that? Maybe I should be asking Mr. Moore that question. No, Your Honor, I believe you're correct in that. In fact, we believe that the District Court, although its outcome was correct in granting summary judgment to the hospital, we believe that its application of the Whitten case, I hope I'm pronouncing that correctly, was entirely incorrect under the circumstances. That case, which the Court said, well, merely a hug was sufficient to be severe in terms of whether or not it created an abusive work environment, we would suggest to this Court that that Whitten case is completely inapplicable for a couple of reasons. The first is the appeal to this Court in the Whitten case, Whitten v. Freds, was really only about the fourth element, whether or not the actions of the supervisor were imputable to the employer. There was no appeal from either side about the third element, and that is whether the actions of the supervisor were sufficiently severe or pervasive to alter the terms and conditions of employment and to create an abusive work environment. So number one, that issue was not for the Court. It was the imputable issue. And number two, we would suggest that the Whitten case differs greatly on the facts. If you look at the District Court's decision, it was essentially comparing an individual, a male, who pressed his genitals up against a female employee with a male supervisor, in this case, who was alleged to have asked for a kiss on three occasions. And as the testimony of Ms. Crockett revealed, Mr. Kemp asked for a kiss, Ms. Crockett said, In the Whitten case, though, you had at least two, by my count, maybe three, if I've misread the case, incidents where the supervisor actually went up to the employee and placed his genitals, rubbed his genitals on her. He was also calling her dumb and stupid. He was telling her that her life would be a living hell. He was making her stay after hours and clean. He was upset with her about setting the alarm and took her day off. Maybe the answer is they're both severe and pervasive. What about here? The fact that she had to show her breasts to him? Well, she did, Your Honor, not entirely all the way. I think she said she thought that her, you know, the nipple was showing. You're correct, Your Honor. She said she thought the nipple might have been showing when she raised her shirt. She also testified, however, that it was clear that Mr. Kemp was not seeking this for any sexual reason, that he just took it as a matter of fact and then said, OK, now we can talk. He made no sexual advances to her. He didn't leer at her, didn't reach for her when she briefly exposed her breasts. It was just up, down. And then he locked the door. Well, he did lock the door, Your Honor. I'll have to give you that now. And he got so close to her that his knees were locking with her knee. That's pretty intimidating. You have to show your you have to show your breasts to prove that you don't have a wife. Well, he never said anything about you have to show your breasts to me. Yes, you showed her stomach. He said that wasn't enough. What do you think he was talking about? He said, no, I need to see it all. I don't think he was asking for any sexual reason. I don't think this request was on account of her sex at all. I think it was determined whether or not she was tape recording. And it turns out, in fact, she had been secretly tape or actually later on was secretly tape recording people admission. So there's a certain irony to that. But I do not believe his request of her to prove that she was wearing a wire was as a result of sex. Under your reasoning, then that would throw out all the case law. We talk about strip searching. You can search the make a woman take her clothes off because it's not about sex. I just want to know whether or not you have a weapon to see whether or not safety. You can always say that defensive aspect of it is that watching an employee have to expose her breast to him locked door. Whether it's for sex or whatever his motive, she doesn't know what he's. Well, your honor, I beg to differ with you. I'm not certain what you're getting at with respect to strip search cases. If you're talking about, oh, no, you said just because I don't think he was motivated by sex, then there would never be any cause of action in a strip search because you could say, no, I had a woman take all of her clothes off. I just didn't want to see her naked. I just want to know whether or not it was I was trying to protect myself. Did she have a weapon? We don't allow that car Blanche type behavior just because the motive may have been something other than just seeing her naked or sex. You suggested it's OK as long as, oh, I want to see you naked, but it's not sexual. I just want to see you naked. No, no, your honor. I'm not suggesting what you said. Well, I'm not suggesting that what Mr. Kemp did was OK. What I'm suggesting you said that it was OK because I don't think he ever meant to be sexual. That's what you said. Well, if I said that, your honor, I misspoke. What I'm suggesting is that Miss Crockett herself testified that this was not about sex in the lifting of the shirt. It was simply about whether or not she had a wife. He wanted to kiss or gas a little down on his that the real Modi was looking for a wire. I mean, I don't necessarily agree with that, your honor. I think given the fact that she did surreptitiously wind up tape recording both coworkers, Mr. Kemp, hospital patients and things of that sort, he might have had some cause for concern. Again, that's simply speculation. There's no evidence to that fact, but I don't necessarily agree with that. As far as the allegation of a kiss, that was denied by Mr. Kemp repeatedly. Obviously, we have to look at this in the light most favorable to Miss Crockett. If she said he kissed her, he kissed her. Now, of course, that does differ from what she said in her EEOC charge. The EEOC charge says he asked for a kiss. Again, this was prepared by an attorney after the fact. There's no mention of any kiss having occurred. But we had argued— In order for you to prevail, you have to prevail on settled legal principles. You can't prevail on a disputed question of facts. That's correct. I think that would resolve, one way or the other, any of the factual issues because you have to prevail only on a legal issue with summary judgment. That's correct, and I think the district court was correct in ruling in our favor for a variety of reasons. One is what we had to supplementally brief this court, and that is that there is no subject matter jurisdiction because the allegations that she made are simply outside the scope of the charge. In fact, I would direct the court to the King v. M. R. Brown case. It's 911 F. Sup. 161. And in that particular case, although it was a same-sex sexual harassment case, the only thing in the charge itself was a hostile work environment case. But yet, when the lawsuit was filed, there were, for lack of a better word, quid pro quo allegations or tangible employment action or detriment. And what the court said there, and I recognize it's not the Fourth Circuit, is that these are really two different causes of action, and they're not reasonably related nor likely to have been part of the EEOC's investigation in that circumstance, and to hold otherwise would really frustrate the purposes of Title VII. So we would submit to this court that, number one, there's no subject matter jurisdiction. Number two, that the actions taken by Mr. Kemp or, as alleged by Ms. Crockett, are certainly unacceptable, but given the Fourth Circuit's case law and what it has found to be acceptable versus unacceptable, we would— What he did was outrageous, but imputing it to his employers is a different matter, isn't it? Yes, sir. I would agree with you on that. You don't look at his conduct in isolation and decide whether it's good or bad because the real target of the suit here is his employer. You're correct, Your Honor, and we would submit that imputing that conduct is not correct under the law. And then finally, we would argue that there's certainly no tangible employment action here. There's nothing about that in the EEOC charge. The testimony is that Mr. Kemp—this is from Ms. Crockett— Mr. Kemp did not have the authority to hire or fire her or suspend her, demote her, and she was actually suspended on the 25th regarding the cell phone use. And I think the Ballas case actually has some instruction about that there where the alleged harasser complained about timekeeping issues and the department manager who investigated and the department manager who ultimately fired her had no knowledge of the claimed harassment by Mr. Price. I see that I'm out of time. If there aren't any further questions, I appreciate your time. Thank you, Mr. Chairman. Thank you. Mr. Moore. Thank you. Thank you. Just briefly, I'd like to go back to a couple of points, one on regarding the subject matter jurisdiction. The initial charge was very specific about the incident of February 18th. That is sufficient to—even if you don't go into matters whether they're related or not, that gives the court subject matter jurisdiction to look into what happened on February 18th, whether it constituted harassment under the law and whether— And the court agreed with you and said it was. Correct. It was severe and pervasive. Well, yes. A jury could find that. And there are cases that say one incident is all that it takes. You don't have to have—it is severe or pervasive. And in this case, I think the evidence presented shows that it was a very severe incident, or at least a reasonable— Then you've got the affirmative defense that the court found was—knocked you out of the water, though. Right. In order to get to an affirmative defense, the defendant has to show that there was no tangible employment action taken. And so our position was that the suspension constituted a tangible employment action. But if you find that that was not a tangible employment action, then the employer can present an affirmative defense. And what hasn't been mentioned is that the Supreme Court said to prevail on the affirmative defense, the employer must prove by a preponderance of the evidence, these two factors.  They have to show that they had in place a program that was well-planned and effective in preventing sexual harassment. There's no evidence that they didn't, but the— The second prong is a real difficulty. Second prong? That the plaintiff employed unreasonably failed to take advantage of the preventive or corrective opportunities, and she stonewalled the investigation. Correct. But that—the issue there comes down to this Green v. Dalton case that I cited from the district court circuit that said the issue is whether a reasonable person under the same or similar—or under the same circumstances would have acted differently. And I think that's a jury question. That's not a question that a court can answer as being established by the preponderance of the evidence. We think that is a genuine issue of material fact in this case. There's a genuine issue as to whether there was any tangible employment action. There's a genuine issue as to whether the defendant can prevail on their affirmative defenses if there wasn't a tangible employment action. What would have been a legal question if the district court ruled in your favor? That is, whether or not legally did it rise to the level of severe and pervasive. It's kind of interesting as to the factual question as to the affirmative defense. You're right. It seems to be whether a reasonable person would have done it. I think that's exactly what the D.C. court said in that Green v. Dalton case, that it's a question of whether what she did under these circumstances was what a reasonable person would or would not have done. I think that clearly— How can you argue that what she did was reasonable? Because she was under a final warning. The final warning, she was told that if she so much as hiccuped, she was going to be fired. Part of the final warning was based on misrepresentation of facts, and that involved something that she had told her supervisor that he denied. This was two days before this incident happened on February 18th. So if she had gone to Human Resources and said what happened, he denied it, she would have been fired anyway. And this case is a little different because she took a parallel track because concurrently she was going through an EEOC complaint and had a lawyer. Right, and she was— So she didn't just sit on her thumb. She was mitigating her damages by proceeding with the EEOC claim. Unless there are any more questions, thank you.
judges: Roger L. Gregory, G. Steven Agee, David A. Faber